**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1-21-CV-23239**

RCI HOSPITALITY HOLDINGS, INC.,

      Plaintiff,

vs.

ARCH SPECIALTY INSURANCE COMPANY,

      Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT**

**COMES NOW**, Plaintiff, RCI HOSPITALITY HOLDINGS, INC, by and through the undersigned counsel, and files this Response in Opposition to Defendant's Motion for Final Summary Judgment pursuant to Fed. R. Civ. P. 56 and S.D. Fla. Loc. R. 56.1, and states in support thereof as follows:

## I.      INTRODUCTION

This is a breach of contract action based on Defendant's denial of Plaintiff's commercial insurance claim for damage as a result of Hurricane Irma. Plaintiff has met its burden to show that the subject property was directly and physically damaged during the policy period. Plaintiff has also provided proper summary judgment evidence to show that the subject damages are covered under the subject policy of insurance.  Defendant has not raised any admissible summary judgment evidence to dispute these facts nor has it raised any admissible summary judgment evidence to meet its burden to prove any exclusions in order to avoid coverage.  Additionally, Defendant has failed to establish the absence of a genuine issue of material fact or that it is entitled to judgment

as a matter of law.    As such, Plaintiff moves for entry of an order denying Defendant's Motion for Final Summary Judgment.

## II.   FACTS

1.    In consideration of premiums paid by the Plaintiffs to Defendant, there was in full force and effect a certain Insurance Policy (hereinafter called the "Policy") bearing policy number ESP 7302423, which insured property located at 18201 NW 2nd Ave., Miami, FL 33169 (hereinafter called "subject property"). [DE 1-3]

2.    On or about September 10, 2017, while the subject Policy was in full force and effect, Plaintiff's property was damaged as a result of a loss stemming from wind damage from Hurricane Irma. Dep. Anakar 10:23-25; 11:1-3; 29:7-25; 30:1-5; 49:6-14; [DE 31-2].

3.    The subject policy of insurance covers direct loss caused by hurricane winds to the property, any wind damage to the interior of the property, as well as debris removal:

**NAMED WINDSTORM EVENT**
A. It is agreed that this policy covers loss or damage to the Covered Property as a result of Named Windstorm, but not including:
   1. Frost or cold weather;
   2. Hail, ice, snow or sleet, whether driven by wind or not; or
   3. Loss or damage to the interior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains Named Windstorm damage to its roof or walls through which the rain, snow, sand or dust enters.
The definition of a Named Windstorm is a Tropical Storm having sustained wind speeds of at least 39 MPH and/or a Hurricane having sustained wind speeds of at least 74 MPH and has been declared by the U.S. National Weather Service to be a Named Tropical Storm or Named Hurricane.

**BUILDING AND PERSONAL**
**PROPERTY COVERAGE FORM**
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
**4. Additional Coverages**
**a. Debris Removal**
**(1)** Subject to Paragraphs **(2), (3)** and **(4)**, we will pay your expense to remove debris of

Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

[DE 1-3]

4.      On September 23, 2019, the Defendant denied Plaintiff's claim. The letter states as follows:

> You failed to provide notice of the loss or damage until approximately two years following the alleged loss date. This prejudiced Arch's ability to timely inspect the property and confirm the existence of potential storm damage, especially as you continued to perform repairs to the property and roof during that timeframe. However, as further detailed below, it does not appear the property suffered damage due to Hurricane Irma based on your testimony, your records showing ordinary maintenance, the statements made to the press following the storm, and the opinions of Arch's consulting engineers.

5.      On August 15, 2022, Defendant filed its Motion for Final Summary Judgment. In its' Motion, Defendant asserts that, "Arch is entitled to judgment as a matter of law due to the prejudice caused by the Plaintiff's late notice. Plaintiff cannot overcome the prejudice presumed to Arch's investigation given that no one could explain the delay in reporting at either Examination Under Oath, Plaintiff's admission that it had no damage three days after the storm, and the undocumented repairs that took place after Irma" [DE 33] Yet, in Defendant's Statement of Undisputed Facts, Defendant provides that, "Arch's consulting engineers from Thornton Tomassetti did not find damage caused by Hurricane Irma following their inspections in 2019 after the claim was reported. *Id.* at p. 11-13. Arch's consulting engineers could not determine the cause of the repairs made prior to their inspection." [DE 32 ¶ 13]

6.      In his Affidavit, Plaintiff's expert, Mr. Harold Charles, testified that "In Florida, I have a Professional Engineer License (license no. FL PE #60447), a General Contractor License (license no. FL CGC #1524490), and I am a Certified Building Inspector with the International

Code Council (license no. 8726033)."[1] [DE 46-5]   He also testified that he has years experience inspecting wind damage claims on residential and commercial properties and determining the cause and duration of the loss. *Id.*

       7.     In his Affidavit, Mr. Charles opines:

    a.  I was hired through Green Ace, LLC., to inspect and thoroughly review the Plaintiff's property and roof, and to determine the cause of, and extent of damages reported at the property resulting from Hurricane Irma.

    b.  My inspection of the property, review of the post loss photographs from the Public Adjusters, my interview with the public adjuster, review of the report Thornton Tomasetti, post-loss photographs showing interior water damage and stains on the ceiling as well as some temporary roof repairs. This type of information is reasonably relied upon by experts in my field.

    c.  A review of CompuWeather Site Specific Weather Analysis Report revealed that the wind speed on September 10, 2017 at the subject property was 64 mph with gusts of 75mph.

    d.  Further, the National Weather Service reported wind gusts of 91 mph in Miami Beach.  Additionally, through my research of weather history through Wunderground Weather Records and the National Weather Service show hurricane conditions in the vicinity of the property during the month of September, including wind gusts up to 84 mph.

    e.  A review of the Tropical Wind Threats Chart reveals that Tropical Storm winds of 60-73 mph gusts to 95 mph can cause a significant threat to life and property with poorly constructed or unsecured mobile homes at risk of being destroyed and others will have substantial damage. Additionally, houses of poor to average construction will have partial wall and roof failure as well as blown out windows. Further, unsecured light to moderate weight outdoor items will become projectiles, causing additional damage and perhaps injury.

    f.  Also, according to the National Hurricane Center, storm force winds extended out from the hurricane center for 175 miles.

    g.  Florida Building Code Section 708.1.1 provides: Not more than 25 percent of the total roof area or roof section of any existing building or structure shall be repaired, replaced or recovered.

    h.  Upon accessing the roof, I noted several areas throughout the entire roof system composed of the three types of roofing materials that were severely damaged by wind pressure due to Hurricane Irma.

---

[1] Resume located at DE 46-2.

i. During the inspection, I noted several areas on the roof perimeter that cap sheet was detached from the eave drip metal, due to wind forces, resulting in water penetrations inside the building.

j. There were noticeable temporary patches installed on the main roof and over the eave drip metal penetrations.

k. It was observed that the A/C stands' footing were challenged as well and in an effort to prevent continued water travel through those penetrations to the premises, silicone compound was used to temporarily seal them.  This was not an A/C issue, but damage from wind forces which detached laps of the roof which resulted in water penetrations affecting the premises below.

l. The entire ceiling system throughout the facility displays evidence of water damage with stains all over.  This was readily observed by me and through photographs by the Public Adjuster.  Several areas were repaired after the storm and others are still leaking and/or display evidence of ceiling damage.

m. On the metal roof portion, I observed where wind forces challenged the metal paneling attachments in several areas resulting in water penetrations inside the premises.

n. There was evidence of wind forces that displaced gravel above the tenant portion of the property which compromised the roof's integrity.  This disturbance to the gravel has allowed vegetation to grow on the roof, which in turn has caused roof leaks.

o. Due to the extent of the damage and temporary repairs to the roof after the storm, it is now an issue, due to code and the 25% rule that the entire roof much be replaced.

p. I also reviewed the Roof Condition Certification Form dated July 2, 2015, which certified that the roofs were in good condition and had a five (5) year remaining useful life.

q. During the inspection I also learned that the establishment hired a contractor to make the temporary repairs to prevent further damage to the leaks after Hurricane Irma.

r. Based on my observations, field analysis of the damage, and the documents [reviewed], it is my professional opinion, to a reasonable degree of engineering certainty that the property (specifically but not limited to the roof) was affected by wind damage to the roof system as a result of Hurricane Irma which occurred on or about September 10, 2017 and the damage was not related to subsequent rain storms, age related issues, nor wear, tear, or deterioration.

s. Hurricane Irma is the latest weather even that was strong enough to have caused this significant damage to the roof.  Additionally, prior to Irma, there has not been anything of that magnitude since Hurricane Wilma is 2005.  Therefore based on that the roof assessment in 2015, it appears that Hurricane Irma is the only even that could have caused this damage to the roof.

t. Based on my observations, field analysis of the damage, and

> documents [reviewed], it is my professional opinion, to a reasonable degree of engineering certainty that the wind pressure and wind gusts produced by Hurricane Irma, created avenues for moisture to enter the structure through openings in the roofing system.
>
> u.  The roof affected by strong wind forces from Hurricane Irma contributed to water intrusion and severe interior damage. Wind created openings allowed water to enter and roof leaks damaged the ceilings and other building materials throughout the property.
>
> v.  Furthermore, the noted damages and conditions are indicative and typical of wind related damages, consistent with the hurricane conditions in the area of the subject property on or about September 10, 2017.
>
> w.  Since the evidence is clear and abundant that high winds, positive wind pressure, and wind-borne debris damaged the roofing system, it is my opinion that the passage of time did not have a detrimental effect on the ability to investigate the cause and duration of the loss and the damages occurred as a direct result of Hurricane Irma.
>
> x.  Further, the insured's own statements of damage after Hurricane Irma, temporary repairs, and delay in reporting did not have a prejudicial effect on the determination of cause of loss for this subject property.
>
> *Id.*

## III.    MEMORANDUM OF LAW

### A.    Burden of Proof in Action Involving Insurance Policies

In breach of contract actions involving insurance claims, the allocation of the burden of proof is dependent upon the nature of the insurance policy. *Mejia v. Citizens Prop. Ins. Corp.,* 161 So. 3d 576, 578 (Fla. 2d DCA 2014). A "specific peril policy" or a "named peril policy," such as a policy of fire or lightening insurance, insures only against certain named risks. *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d DCA 1984). Under a named perils insurance policy, the insured bears the initial burden to prove that during the policy period a covered cause of loss the damaged the property. *Rodrigo v. State Farm Fla. Ins. Co.,* 144 So. 3d 690, 693 (Fla. 4th DCA 2014). Once the insured meets this initial burden, the burden then shifts to the insurer to prove that the cause of the loss was excluded under the terms of the policy and that exclusion must also be pled as an affirmative defense. *St. Paul Mercury Insurance Company*

*v. Coucher,* 837 So. 2d 483, 487 (Fla. 5th DCA 2002); *Fla Farm Bur. Gen. Ins Co. v. Ins. Co. of N. Am.,* 763 So. 2d 429, 432 (Fla. 5th DCA 2000); and *Peninsular Life Ins. Co. v. Hanratty,* 281 So. 2d 609, 611 (Fla. 3d DCA 1973).

**B.     Party Limited to Issues Raised in its Pleadings**

A judgment in any given case must be based upon a claim or defense that was either properly pled or tried by consent of the parties. *S. Fla. Coastal Elec., Inc. v. Treasures on Bay II Condo Ass'n,* 89 So. 3d 264, 266 (Fla. 3d DCA 2012) (citations omitted). "Affirmative defenses not alleged in the answer or a motion attacking the sufficiency of the complaint are deemed waived." *Bilow v. Benoit*, 519 So. 2d 1114, 1116 (Fla. 1st DCA 1988).

An insurer's defense based on a policy exclusion is appropriately raised as an affirmative defense. *St. Paul Mercury Ins. Co. v. Coucher,* 837 So. 2d 483, 487 (Fla. 5th DCA 2002) (citation omitted); see also *Peninsular Life Ins. Co. v. Hanratty,* 281 So. 2d 609 (Fla. 3d DCA 1973) (Where a policy exclusion was not asserted as an affirmative defense in its answer, the defendant insurance company was estopped to raise the defense at the time of trial.)

"It is clearly established that at a hearing on a motion for summary judgment, the issues to be considered are those made by the pleadings." *Couchman v. Goodbody & Co.,* 231 So. 2d 841, 8843 (Fla. 4th DCA 1970) (citing *Holl v. Talcott*, 191 So. 2d 40 (Fla. 1966)). Issues that are not raised in a party's pleadings cannot be considered by the trial court at a summary judgment hearing. *Saralegui v. Sacher, Zelman, Van Sant Paul, Beily, Hartman & Waldman, P.A.,* 19 So. 3d 1048, 1051 (Fla. 3d DCA 2009) (citation omitted). Likewise, a court is limited to the grounds raised in a motion for summary judgment. *HSBC Mortg. Corp. (USA) v. Mullan*, 159 So. 3d 250, 252 (Fla. 2d DCA 2015) (citations omitted).

## IV.   <u>ARGUMENT</u>

**A. Plaintiff's Notice of Loss Was Not Untimely and Defendant is not Entitled to a Presumption of Prejudice.**

First, according to the applicable insurance policy, the Plaintiff did not "untimely" or "not promptly" report the claim.  The Policy states as follows:

> 3. Duties In The Event Of Loss Or Damage
> a. You must see that the following are done in the event of loss or damage to Covered
> Property:
> (**2**) Give us prompt notice of the loss or damage. Include a description of the property involved.

See [DE 1-3]

Additionally, Florida Statute Section 627.70132, provides:

> (2)   A claim or reopened claim, but not a supplemental claim, under an insurance policy that provides property insurance, as defined in s. 624.604, including a property insurance policy issued by an eligible surplus lines insurer, for loss or damage caused by any peril is barred unless notice of the claim was given to the insurer in accordance with the terms of the policy within 2 years after the date of loss. A supplemental claim is barred unless notice of the supplemental claim was given to the insurer in accordance with the terms of the policy within 3 years after the date of loss.

The term "prompt" is not defined in the subject policy.  *State Farm Fire & Cas. Co. v. CTC Dev. Corp.,* 720 So.2d 1072, 1076 (Fla.1998) explains that when an insurer fails to define a policy term, the insurer cannot then take the position that coverage should be construed narrowly.

As a result, there is ambiguity within the Policy that is the basis of this litigation.  The ambiguity is when the loss should have been reported.   If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the other

limiting coverage, the insurance policy is considered ambiguous. See *Weldon v. All Am. Life Ins. Co.*, 605 So.2d 911, 914–15 (Fla. 2d DCA 1992).  Ambiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy. *See CTC Dev. Corp.,* 720 So.2d at 1076.  Additionally, Florida law is clear that specific provisions of a contract control over general conditions. *Underwriters of Lloyds of London v. Cape Publ'ns, Inc.,* 63 So.3d 892, 896 (Fla. 5th DCA 2011) (citing *Colonial Bank, N.A. v. Taylor Morrison Servs., Inc.,* 10 So.3d 653, 655 (Fla. 5th DCA 2009)). This caveat applies to insurance contracts. See *Herring v. Horace Mann Ins. Co.,* 795 So.2d 209, 212 (Fla. 4th DCA 2001)(holding, when provisions of insurance policy conflict, "[w]e recognize the clear rule of construction that a specific provision in a policy governs over a general provision").

The Plaintiff did not draft the policy, and the Plaintiff substantially complied with the Policy and the duties required of them by reporting the loss within three years after Hurricane Irma made landfall.  Therefore, the Policy should be applied liberally in their favor.  Since Plaintiff timely and promptly reported the loss as per the Policy and Florida Statute, there should be no presumption of prejudice against the Plaintiffs and Defendant's Motion regarding same should be denied.

Additionally, although Plaintiffs timely and promptly notified the carrier of the claim, Plaintiff also argues that there should not be a presumption of prejudice nevertheless.  Defendant, through its hired expert, Thornton Tomasetti, was able to make a coverage determination that there was no damage as it relates to Hurricane Irma.  Moreover, Plaintiff's expert was also not prejudiced in his investigation of the cause of loss.  Further, Defendant never took the deposition of Xclusive Roofing, the roofing company who made temporary repairs to the property to determine why and/or when they made repairs to the property after Hurricane Irma struck Florida.   Florida law

has long recognized that "an insured's violation of a notice requirement does not relieve the insurer of its contractual obligation to defend when no prejudice is shown." *BellSouth Telecomm., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 671 (Fla. 3d Dist. App. 2006)(citing *Aguero v. First Am. Ins. Co.*, 927 So.2d 894 (Fla. 3d DCA 2005)(finding that summary judgment was improper, even if an additional insured delayed in notifying an insurer of a lawsuit filed against the additional insured, because a genuine issue of material fact existed as to whether the insurer was prejudiced by the delay)). Indeed, "[i]t is well established in Florida decisions that, in general, when an insurer is entitled to receive notice as a condition precedent to maintaining an action on a claim, violation of that provision will not operate to defeat coverage absent substantial prejudice to the insurer." *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1337 (S.D. Fla. 2010), aff'd, 477 Fed. Appx. 702 (11th Cir. 2012) (quoting *Indep. Fire Ins. Co. v. NCNB Nat'l Bank of Fla*., 517 So.2d 59, 64 (Fla. 1st DCA 1987))(emphasis added). "[A]n insured may show that the insurer had access to 'substantial information' regarding the claim, creating an issue of fact of whether the delay prejudiced the insurer." *Banta Properties, Inc. v. Arch Specialty Ins. Co*., 10-61485-CIV, 2011 WL 5928578, at *4 (S.D. Fla. Nov. 23, 2011); see also, *Robinson v. Auto Owners Ins. Co*., 718 So.2d 1283, 1284-85 (Fla. 2d DCA 1998)(reversing summary judgment in favor of an insurer on late notice when insurer was notified of accident four years after it occurred).

Here, Plaintiff has shown that the insurer had access to substantial information regarding the claim. Plaintiff's own testimony regarding where the damages occurred and when. Additionally, Plaintiff's own experts stated they were not prejudiced. Even Defendant's expert was able to make a conclusion that there was no damage related to the storm. Additionally, it should be noted that Defendant has not provided any testimony or Affidavit in support of their assertion of prejudice.

As to the issue of whether prejudice is a material issue of fact, Plaintiff instructs the Court to *Stark v. State Farm Florida Ins. Co.*, 95 So.3d 285, 288 (Fla. 4th DCA 2012), in which the Fourth District Court of Appeal stated the following:

> In the present case, the affidavits of Nicholson and McDonald created issues of material fact as to whether the insureds could overcome the presumption of prejudice applicable to the late notice provided to the insurer. Nicholson's opinion that the insurer could still have observed the "classic pattern of windstorm damage" left by Hurricane Wilma as late as 2010 suggested that the insureds could convince a finder of fact that their noncompliance with the notice provision did not prejudice the insurer by depriving it "of the opportunity to investigate the facts."

Under *Stark*, the affidavit of Rick Calpitano creates a material issue of fact as to prejudice. Mr. Calpitano, an experienced licensed roofing contractor, general contractor and duly qualified causation expert, has provided affidavit testimony that the damages to Plaintiff's fence, screen enclosure / lanai, roof, and the ensuing interior damages were causally related to winds from Hurricane Irma. The evidence Mr. Calpitano based his opinion upon ***was readily available to Defendant during its investigation***: historical weather data; a video of the weather during Hurricane Irma taken by Plaintiff at the home on September 10, 2017; the Broward County property appraiser records for the subject property; Uniform Mitigation Verification Inspection Form dated July 20, 2017 (with photographs); the statements from Plaintiff regarding the severity of the storm; the statements from Plaintiff regarding the proximity of time the roof leaks began; and photographs taken at the time of Defendant's investigation, among other materials. Despite the passage of time since Hurricane Irma, Mr. Calpitano was able to investigate the loss, determine the cause of loss, and extent of the damages due to the observable damage present on the roof, the fence, the screen enclosure / lanai, as well as the interior damages, as seen in photographs of the subject property taken during the time of Defendant's inspection, and that Defendant should have been able to do the same. Accordingly, Plaintiff has certainly produced competent evidence to

rebut any argument of prejudice or presumption of prejudice on behalf of the insurer and the issue is properly a jury question.

A recent case out of the Fourth District Court of Appeals, *Perez v. Citizens Prop. Ins. Corp.,* No. 4D21-2944 (August 10, 2022), is directly on point as it relates to the prejudice issue. In that case, the insureds' property sustained damage as a result of Hurricane Irma. *Id.*, at *1. The insureds reported the claim to Citizens on November 27, 2018. *Id.*, at *1. Citizens denied the claim on the basis that insureds' failure to timely report the loss prejudiced Citizens' investigation of the claim. *Id.*, at *2.

Following Citizens' denial of the claim, the insured filed a lawsuit against Citizens for breach of contract. *Id.*, at *2. Citizens moved for summary judgment arguing that the insureds violated the policy's "prompt notice" and "suit against us" conditions. *Id.*, at *2. It claimed that the insureds had notice of damage but did not report it until fourteen months after the date of loss. *Id.*, at *2. Due to the delay, Citizens argued that it was prejudiced, because it could not confirm the cause of the loss or the property damage attributable to it. *Id.*, at *2. In response to Citizens' motion for summary judgment, the insureds attached an affidavit and report from a building inspector. *Id.*, at *2. The insureds' expert reviewed historical weather data; Citizens' field adjuster damage photos; weather calculation manuals; and included documentation of the inspector's physical inspection of the property. *Id.*, at *2. The insured's expert opined that the roof damage was caused by wind forces and processes associated with Hurricane Irma. *Id.*, at *2. He was able to associate the property damage to Hurricane Irma "within a reasonable degree of professional certainty," notwithstanding the passage of time since the date of loss. *Id.*, at *2. After a hearing, the trial court granted Citizens' motion for summary judgment, finding that: insureds' notice was untimely; Citizens was presumed prejudiced by the timing of the notice; and the insureds failed to

rebut the presumption. *Id.*, at \*3.

On appeal, the Fourth DCA reversed the trial court's ruling, finding that the affidavit of the insureds' expert raised a genuine dispute as to a material fact. *Id.*, at \*4. In its opinion, the Fourth DCA stated that the insured's "expert testified that, even with the delay in notice, he could determine that Hurricane Irma was the cause of the damages to the property and their extent." *Id.*, at \*4. Similarly here, Plaintiff's expert has provided an affidavit opining that—despite the delay in notice—he can still determine that Hurricane Irma was the cause of the damages to the property and their extent (as well as provide full, competent and methodical basis for same). Therefore, the Court here too should deny Defendant's Motion for Summary Judgment.

The passage of time did not obstruct the Defendant from fully investigating the claim. Thus, the Plaintiff has satisfied any burden of showing that reporting the claim did not prejudice Defendant. Even if Defendant was, Plaintiff has provided enough evidence that overcome the presumption of prejudice.

**B. The Record Evidence Demonstrates that the Plaintiff's Property Suffered a Direct Physical Loss by a Covered Peril on or about September 10, 2017 and Defendant Breached by Failing to Pay Plaintiff for the Loss that Should Have Been Covered Under the Subject Policy of Insurance.**

Here, it is undisputed that the Plaintiff's property was damaged by Hurricane Irma (winds–covered peril) during the policy period and that Defendant failed to pay for the loss. Plaintiff has done so through the deposition testimony of itself, Tammie Smith, Philip Desamours, Harold Charles (Affidavit, EUO and deposition[2]), and Danesh Basdeo. Furthermore, Plaintiff has provided proper summary judgment evidence to show that the subject property's roof was damaged by wind from Hurricane Irma, which exposes the Defendant to repairs related to the

---

[2] Deposition at [DE 46-4].

exterior roof and interior of the property.

Accordingly, Plaintiff has met its burden with proper summary judgment evidence to prove that during the policy period a covered cause of loss the damaged the property and that Defendant breached by failing to pay for the loss.

**C. Discovery is Still Pending and Accordingly, Summary Judgment is Improper.**

Where discovery is not complete, the facts are not sufficiently developed to enable the trial court to determine whether genuine issues of material facts exist. *Payne v. Cudjoe Gardens Prop. Owners Ass'n, Inc.,* 837 So. 2d 458, 461 (Fla. 3d DCA 2002). Thus, where discovery is still pending, the entry of Summary Judgment is premature. *Id.* See *Smith v. Smith,* 734 So.2d 1142, 1144 (Fla. 5th DCA 1999)("Parties to a lawsuit are entitled to discovery as provided in the Florida Rules of Civil Procedure including the taking of depositions, and it is reversible error to enter summary judgment when discovery is in progress and the deposition of a party is pending."); *Henderson v. Reyes,* 702 So.2d 616, 616 (Fla. 3d DCA 1997)(reversing the entry of Summary Judgment where depositions had not been completed and a request for the production of documents was outstanding.); *Collazo v. Hupert,* 693 So.2d 631, 631 (Fla. 3d DCA 1997) (holding that a trial court should not entertain a motion for summary judgment while discovery is still pending); *Spradley v. Stick,* 622 So.2d 610, 613 (Fla. 1st DCA 1993); *Singer v. Star,* 510 So.2d 637 (Fla. 4th DCA 1987).

Plaintiff stated fully in its Motion to Extend and/or Continue the Discovery and Pre-Trial Deadline that it never was able to complete the deposition of Defendant and any expert or employee of Thornton Tomasetti and has been severely prejudiced as a result of same. Additionally, Defendant refused to appear for the deposition of Mr. Harold Charles despite appearing for depositions a week before his, all after the discovery deadline. [DE 37]

Thus, entry of summary judgment at this time would be premature and would constitute reversible error. Accordingly, Defendant's Motion for Summary Judgment must be denied.

**D. The fact that Plaintiff commenced repairs to the property prior to reporting the claim to Defendant is not, in and of itself, a bar to recover. Moreover, there is a genuine issue of material fact as to whether the repairs made to the property by Plaintiff prejudiced Defendant.**

At deposition, Plaintiff testified that following Hurricane Irma, and prior to reporting the claim to Defendant, they made repairs to the property. Plaintiff testified at deposition that they did not report the claim at that time, as the damages were not such as to rise to the level of filing a claim. However, over time, the damages appeared to get worse, and Plaintiff realized that they should file a claim with Defendant.

To put it differently—and in a slightly different context—one would not call their health insurance company to file an insurance claim, every time that they had a minor cut, or had to apply a band-aid. One would only be expected to get their insurance company involved if the situation rose to a more serious issue. The same could be said here. Plaintiff was not aware of damage that rose to the level of filing an insurance claim, until it was clear to her that there was a systematic, widespread issue with her property. As the record evidence is clear, when they realized the widespread scope and extent of the damage, she reported same to the insurance company. Based on the caselaw, set forth fully above, it is for a trier of fact to determine if notice in this case was provided with reasonable dispatch and within a reasonable time in view of all the facts and circumstances.

In fact, under the terms of the policy, Plaintiff was required to "Take all reasonable steps to protect the Covered Property from further damage…" *See* [DE 1-3].   Thus, the policy clearly mandates that Plaintiff take measures to mitigate the damages and protect the property from further damage following a loss. Defendant cannot now hold it against Plaintiff for doing precisely what

the policy requires.

**E. Defendant's coverage determination creates a waiver of post-loss compliance arguments.**

An insured's breach of a post-loss obligation does not result in post-occurrence forfeiture of insurance coverage without regard to prejudice. *See Bankers Ins. Co. v. Macias*, 475 So. 2d 1216 (Fla. 1985); *State Farm Mut. Auto. Ins. Co. v. Curran*, 135 So. 3d 1071, 1079 (Fla. 2014) ("Having concluded that prejudice is a necessary consideration when the insured breaches a CME provision, we also hold that burden of pleading and proving that issue is on State Farm.") Defendant's affirmative defenses do not allege any prejudice nor do they lay out facts that go to same.

Further, Defendant's coverage determination letter was a denial of the claim. Specifically, the letter states, "it does not appear the property suffered damage due to Hurricane Irma based on your testimony, your records showing ordinary maintenance, the statements made to the press following the storm, and the opinions of Arch's consulting engineers."

The Insurance Company unilaterally determined that it had received sufficient information to evaluate and deny the claim. Any outstanding or other requests for information were obviously deemed unnecessary by the Insurance Company to determine the denial of coverage under the terms of the policy and, thus, waived.[3]  [T]he nature of the post-loss obligations is merely to provide the insurer with an independent means by which to determine the amount of loss, as opposed to relying solely on the representations of the insured. *Scottsdale Ins. Co. v. University at 107th Ave., Inc.*, 827 So.2d 1016, 1016 (3d DCA 2002).

Therefore, because the claim was denied, Defendant waived the right it had to enforce the

---

[3] *E.g., Mutual Ben. Health & Accident Ass'n v. Bunting*, 183 So. 321, 329 (Fla. 1938)("[T]he law does not require a vain, useless, or unnecessary thing, that is, something that will be unavailing...").

insured's post-loss conditions. *Ifergane v. Citizens Prop. Ins. Corp.*, 232 So. 3d 1063, 1065 (Fla. Dist. Ct. App. 2017)(held it was necessary to resolve the issue of whether the Citizens' letter was a denial of coverage letter, then as a matter of law, Citizens waived any right it had to enforce the insured's post-loss conditions—including the right to take the insured's examination under oath. *See, e.g., Wegener v. Int'l Bankers Ins. Co.*, 494 So.2d 259, 259 (Fla. 3d DCA 1986) (concluding as a matter of law that "the effect of the ... repudiation of coverage was to waive any right to insist upon the insureds' ... compliance with the various conditions to recovery"); *Castro v. Homeowners Choice Prop. Cas. Ins. Co.*, No. 2D15-5456, 228 So.3d 596, 599, 2017 WL 3614102, at *2 (Fla. 2d DCA Aug. 23, 2017) ("When an insurance carrier investigates a claim of loss and denies coverage because it concludes that a covered loss has not occurred, the insurance carrier cannot assert the insured's failure to comply with the policy's conditions precedent to filing suit as a basis for summary judgment.").

This is long-standing, established Florida law because to hold otherwise would effectively establish a rule of law that a waiver of policy obligations could *never* occur. This would result in absurdities, such as allowing an insurer to demand compliance with policy conditions in the middle of or after a trial had been completed, in order to further delay payment of a valid claim. Furthermore, the refusal to allow for an irrevocable waiver of post-loss obligations (which is contrary to Florida law) would encourage an insurer to initially conduct a substandard investigation and adjustment of a claim, knowing it could always conduct a "proper" investigation later, which would be contrary to another long-standing Florida policy - encouraging "the prompt settlement of insurance claims." *Independent Fire Ins. Co. v. Lugassy*, 593 So.2d 570, 572 (3d DCA 1992), *citing, Wollard v. Lloyd's & Companies of Lloyd's*, 439 So.2d 217 (Fla. 1983); *see also, Imhof v. Nationwide Mut. Ins. Co.*, 643 So.2d 617, 618-619 (Fla. 1994)("The law favors settlement of

disputes and the avoidance of litigation. The pretrial settlement of a lawsuit is generally favored because it saves scarce judicial resources.")(citations omitted)(receded from on other grounds).

It is also settled law in Florida that an insurance company, through its conduct to the insured, can waive compliance with any or all policy conditions. Waiver of policy conditions by an insurance company can be effectuated in a number of ways, including, but not limited to an insurer's breach of the contract: "A breach by one party to a contract repudiates the contract and relieves the other party from being obligated to the contract terms and conditions." *Hospital Mortgage Group v. First Prudential Development Corp.*, 411 So.2d 181, 182 (Fla. 1982); *see also, Waters v. Key Colony East, Inc.*, 345 So.2d 367, 367 (3d DCA 1977)("A party to a contract cannot take advantage of his own wrongdoing to avoid responsibility thereunder."); *Cheezem Development Corp. v. Intracoastal Sales & Service, Inc.*, 336 So.2d 1210, 1212 (2d DCA 1976)("As the party who initially committed a substantial breach of the contract, Intracoastal was not entitled to avail itself of a claimed subsequent breach by Chatlos.").

## V.   CONCLUSION

The Plaintiff has met their burden to prove that during the policy period a covered cause of loss the damaged the property and that Defendant breached by failing to pay for the loss. The Plaintiff has done so by providing proper undisputed summary judgment evidence through the testimony of Plaintiff, Dan Basdeo, Harold Charles (EUO, Affidavit, and Deposition), Tammie Smith, and Philip Desamours.  Plaintiff has shown undisputed evidence that Defendant was not prejudiced in its investigation of the claim and Plaintiff complied with the Policy and Florida Statute by reporting the claim within the three years after Hurricane Irma made landfall. Moreover, Plaintiff has also shown that Defendant has failed to meet its burden to prove that the cause of the loss was excluded under the terms of the policy with proper summary judgment

evidence. The only thing the Defendant has shown is how it unsuccessfully attempted to not cover a claim by ignoring the observed damages at the Plaintiff's, and insureds who pay premiums for insurance, property. There are clearly issues of material fact that should be determined by a jury. For these reasons, Plaintiff is entitled to final summary judgment as a matter of law and the Defendant's Motion for Final Summary Judgment must be denied.

   **WHEREFORE**, the Plaintiff, RCI HOSPITALITY HOLDINGS, INC, respectfully request that this Honorable Court enter an order denying Defendant's Motion for Final Summary Judgment and award any and all such further relief that the Court deems just and proper.

Dated: September 6, 2022                    Respectfully submitted,


                               */s/ Lauren Flotron Lombardo*
                               LAUREN FLOTRON LOMBARDO, ESQ.
                               Florida Bar No: 110740
                               THE MINEO SALCEDO LAW FIRM, P.A.
                               Attorneys for Plaintiff
                               5600 Davie Road
                               Davie, FL  33314
                               T: (954) 463-8100
                               F: (954) 463-8106
                               Service@mineolaw.com
                               LLombardo@mineolaw.com
                               EmmaF@mineolaw.com


## CERTIFICATE OF SERVICE

   WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on September 6, 2022 on all counsel or parties of record on the Service List below.

                               */s/ Lauren Flotron Lombardo*
                               LAUREN FLOTRON LOMBARDO, ESQ.

**SERVICE LIST**

Christopher M. Ramey, Esq.
Justin W. Sblano, Esq.
BUTLER WEIHMULLER KATZ CRAIG, LLP
400 N. Ashley Dr.
Suite 2300
Tampa, FL 33602
cramey@butler.legal
hkerr@butler.legal
jsblano@butler.legal
Mdillard@butler.legal
pwilliams@butler.legal
Attorneys for Defendant