UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1-21-CV-23239

RCI HOSPITALITY HOLDINGS, INC.,

    Plaintiff,

vs.

ARCH SPECIALTY INSURANCE COMPANY,

    Defendant.
_____/

## PLAINTIFF'S RESPONSES AND OPPOSING FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed. Plaintiff seeks $4,222.932.39 plus attorneys' fees and costs. *See* Plaintiff's Supplemental Disclosures attached hereto as Exhibit A.

5. Undisputed.

6. Undisputed

7. Disputed.   There is no definition of prompt in the policy.

8. Undisputed.

9. Undisputed.

10. Disputed. This is hearsay testimony.

11. Disputed. Defendant did not take the deposition of the roof repair company or any other maintenance employees other than Dan Basdeo.

12. Disputed.   Defendant was able to make a coverage determination as stated in detail in their letter that there was no damage due to the storm and corroborated by their expert

engineers in their reports attached hereto as Exhibit B and in Defendant's Paragraph 13 below.   Therefore, there was no prejudice.

13. Undisputed.

14. Undisputed as to the letter.   However, Defendant's legal opinion and analysis of same is disputed and not a statement of fact because the letter speaks for itself.   Additionally, no Affidavit of same was presented to rebut this hearsay evidence.

15. Undisputed.

16. Undisputed.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Disputed.   Mr. Charles appeared for a deposition in August. [DE 46-4]   Additionally, Mr. Charles testified what he reviewed. [DE 46-4 and 46-5]

22. Disputed.   This was an examination under oath where Mr. Charles was not cross examined by Plaintiff.   Mr. Charles later appeared for a deposition in August. [DE 46-4] Additionally, Mr. Charles testified the basis for his conclusions. [DE 46-4 and 46-5]

23. Disputed.   Mr. Charles testified he reviewed receipts and aerial photographs to do determine this. *Id.*   Additionally, this was an examination under oath where Mr. Charles was not cross examined by Plaintiff.

24. Undisputed.

25. Undisputed.

26. Disputed.   Plaintiff seeks $4,222.932.39 plus attorneys' fees and costs. *See* Plaintiff's Supplemental Disclosures attached hereto as Exhibit A.

27. Undisputed.

28. Undisputed.

29. Disputed. Plaintiff has made repairs and seeks replacement cost as well.   *See* Plaintiff's Supplemental Disclosures attached hereto as Exhibit A.

30. Disputed. *See* Plaintiff's Supplemental Disclosures attached hereto as Exhibit A

31. Undisputed.

32. Disputed. *See* Plaintiff's Supplemental Disclosures attached hereto as Exhibit A

33. Undisputed.

ADDITIONAL FACTS

34. In consideration of premiums paid by the Plaintiffs to Defendant, there was in full force and effect a certain Insurance Policy (hereinafter called the "Policy") bearing policy number ESP 7302423, which insured property located at 18201 NW 2nd Ave., Miami, FL 33169 (hereinafter called "subject property"). [DE 1-3]

35. On or about September 10, 2017, while the subject Policy was in full force and effect, Plaintiff's property was damaged as a result of a loss stemming from wind damage from Hurricane Irma. Dep. Anakar 10:23-25; 11:1-3; 29:7-25; 30:1-5; 49:6-14; [DE 31-2].

36. The subject policy of insurance covers direct loss caused by hurricane winds to the property, any wind damage to the interior of the property, as well as debris removal:

**NAMED WINDSTORM EVENT**
A. It is agreed that this policy covers loss or damage to the Covered Property as a result of Named Windstorm, but not including:
      1. Frost or cold weather;
      2. Hail, ice, snow or sleet, whether driven by wind or not; or
      3. Loss or damage to the interior of any building or structure, or the property inside

> the building or structure, caused by rain, snow, sand or dust, whether driven by wind or not, unless the building or structure first sustains Named Windstorm damage to its roof or walls through which the rain, snow, sand or dust enters.

The definition of a Named Windstorm is a Tropical Storm having sustained wind speeds of at least 39 MPH and/or a Hurricane having sustained wind speeds of at least 74 MPH and has been declared by the U.S. National Weather Service to be a Named Tropical Storm or Named Hurricane.

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
A. Coverage
We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
**4. Additional Coverages**
**a. Debris Removal**
**(1)** Subject to Paragraphs **(2), (3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

[DE 1-3]

37. On September 23, 2019, the Defendant denied Plaintiff's claim. The letter states as follows:

> You failed to provide notice of the loss or damage until approximately two years following the alleged loss date. This prejudiced Arch's ability to timely inspect the property and confirm the existence of potential storm damage, especially as you continued to perform repairs to the property and roof during that timeframe. However, as further detailed below, it does not appear the property suffered damage due to Hurricane Irma based on your testimony, your records showing ordinary maintenance, the statements made to the press following the storm, and the opinions of Arch's consulting engineers.

38. On August 15, 2022, Defendant filed its Motion for Final Summary Judgment. In its' Motion, Defendant asserts that, "Arch is entitled to judgment as a matter of law due to the prejudice caused by the Plaintiff's late notice. Plaintiff cannot overcome the prejudice presumed to Arch's investigation given that no one could explain the delay in reporting at either Examination Under Oath, Plaintiff's admission that it had no damage three days after

the storm, and the undocumented repairs that took place after Irma" [DE 33] Yet, in Defendant's Statement of Undisputed Facts, Defendant provides that, "Arch's consulting engineers from Thornton Tomassetti did not find damage caused by Hurricane Irma following their inspections in 2019 after the claim was reported. *Id.* at p. 11-13. Arch's consulting engineers could not determine the cause of the repairs made prior to their inspection." [DE 32 ¶ 13]

39. In his Affidavit, Plaintiff's expert, Mr. Harold Charles, testified that "In Florida, I have a Professional Engineer License (license no. FL PE #60447), a General Contractor License (license no. FL CGC #1524490), and I am a Certified Building Inspector with the International Code Council (license no. 8726033)."[1] [DE 46-5]   He also testified that he has years experience inspecting wind damage claims on residential and commercial properties and determining the cause and duration of the loss. *Id.*

40. In his Affidavit, Mr. Charles opines:

   a. I was hired through Green Ace, LLC., to inspect and thoroughly review the Plaintiff's property and roof, and to determine the cause of, and extent of damages reported at the property resulting from Hurricane Irma.
   b. My inspection of the property, review of the post loss photographs from the Public Adjusters, my interview with the public adjuster, review of the report Thornton Tomasetti, post-loss photographs showing interior water damage and stains on the ceiling as well as some temporary roof repairs. This type of information is reasonably relied upon by experts in my field.
   c. A review of CompuWeather Site Specific Weather Analysis Report revealed that the wind speed on September 10, 2017 at the subject property was 64 mph with gusts of 75mph.
   d. Further, the National Weather Service reported wind gusts of 91 mph in Miami Beach.  Additionally, through my research of weather history through Wunderground Weather Records and the National Weather Service show hurricane conditions in the vicinity of the property during the month of September, including wind gusts

---

[1] Resume located at DE 46-2.

      up to 84 mph.
- e. A review of the Tropical Wind Threats Chart reveals that Tropical Storm winds of 60-73 mph gusts to 95 mph can cause a significant threat to life and property with poorly constructed or unsecured mobile homes at risk of being destroyed and others will have substantial damage. Additionally, houses of poor to average construction will have partial wall and roof failure as well as blown out windows. Further, unsecured light to moderate weight outdoor items will become projectiles, causing additional damage and perhaps injury.
- f. Also, according to the National Hurricane Center, storm force winds extended out from the hurricane center for 175 miles.
- g. Florida Building Code Section 708.1.1 provides: Not more than 25 percent of the total roof area or roof section of any existing building or structure shall be repaired, replaced or recovered.
- h. Upon accessing the roof, I noted several areas throughout the entire roof system composed of the three types of roofing materials that were severely damaged by wind pressure due to Hurricane Irma.
- i. During the inspection, I noted several areas on the roof perimeter that cap sheet was detached from the eave drip metal, due to wind forces, resulting in water penetrations inside the building.
- j. There were noticeable temporary patches installed on the main roof and over the eave drip metal penetrations.
- k. It was observed that the A/C stands' footing were challenged as well and in an effort to prevent continued water travel through those penetrations to the premises, silicone compound was used to temporarily seal them.   This was not an A/C issue, but damage from wind forces which detached laps of the roof which resulted in water penetrations affecting the premises below.
- l. The entire ceiling system throughout the facility displays evidence of water damage with stains all over.   This was readily observed by me and through photographs by the Public Adjuster.   Several areas were repaired after the storm and others are still leaking and/or display evidence of ceiling damage.
- m. On the metal roof portion, I observed where wind forces challenged the metal paneling attachments in several areas resulting in water penetrations inside the premises.
- n. There was evidence of wind forces that displaced gravel above the tenant portion of the property which compromised the roof's integrity.   This disturbance to the gravel has allowed vegetation to grow on the roof, which in turn has caused roof leaks.
- o. Due to the extent of the damage and temporary repairs to the roof after the storm, it is now an issue, due to code and the 25% rule that the entire roof much be replaced.
- p. I also reviewed the Roof Condition Certification Form dated July 2, 2015, which certified that the roofs were in good condition and had

      a five (5) year remaining useful life.
- q. During the inspection I also learned that the establishment hired a contractor to make the temporary repairs to prevent further damage to the leaks after Hurricane Irma.
- r. Based on my observations, field analysis of the damage, and the documents [reviewed], it is my professional opinion, to a reasonable degree of engineering certainty that the property (specifically but not limited to the roof) was affected by wind damage to the roof system as a result of Hurricane Irma which occurred on or about September 10, 2017 and the damage was not related to subsequent rain storms, age related issues, nor wear, tear, or deterioration.
- s. Hurricane Irma is the latest weather even that was strong enough to have caused this significant damage to the roof. Additionally, prior to Irma, there has not been anything of that magnitude since Hurricane Wilma is 2005. Therefore based on that the roof assessment in 2015, it appears that Hurricane Irma is the only even that could have caused this damage to the roof.
- t. Based on my observations, field analysis of the damage, and documents [reviewed], it is my professional opinion, to a reasonable degree of engineering certainty that the wind pressure and wind gusts produced by Hurricane Irma, created avenues for moisture to enter the structure through openings in the roofing system.
- u. The roof affected by strong wind forces from Hurricane Irma contributed to water intrusion and severe interior damage. Wind created openings allowed water to enter and roof leaks damaged the ceilings and other building materials throughout the property.
- v. Furthermore, the noted damages and conditions are indicative and typical of wind related damages, consistent with the hurricane conditions in the area of the subject property on or about September 10, 2017.
- w. Since the evidence is clear and abundant that high winds, positive wind pressure, and wind-borne debris damaged the roofing system, it is my opinion that the passage of time did not have a detrimental effect on the ability to investigate the cause and duration of the loss and the damages occurred as a direct result of Hurricane Irma.
- x. Further, the insured's own statements of damage after Hurricane Irma, temporary repairs, and delay in reporting did not have a prejudicial effect on the determination of cause of loss for this subject property.

    *Id.*

41. Plaintiff did not draft the insurance policy.

42. Plaintiff timely and promptly notified the carrier of the claim.

43. Defendant, through its hired expert, Thornton Tomasetti, was able to make a coverage determination that there was no damage as it relates to Hurricane Irma.

44. Plaintiff's expert was also not prejudiced in his investigation of the cause of loss.

45. Defendant never took the deposition of Xclusive Roofing, the roofing company who made temporary repairs to the property to determine why and/or when they made repairs to the property after Hurricane Irma struck Florida.

46. Under the terms of the policy, Plaintiff was required to "Take all reasonable steps to protect the Covered Property from further damage…" *See* [DE 1-3].

47. The policy clearly mandates that Plaintiff take measures to mitigate the damages and protect the property from further damage following a loss. *Id.*

48. Plaintiff mitigated its' damages.

Dated: September 6, 2022            Respectfully submitted,

*/s/ Lauren Flotron Lombardo*
LAUREN FLOTRON LOMBARDO, ESQ.
Florida Bar No: 110740
THE MINEO SALCEDO LAW FIRM, P.A.
Attorneys for Plaintiff
5600 Davie Road
Davie, FL   33314
T: (954) 463-8100
F: (954) 463-8106
Service@mineolaw.com
LLombardo@mineolaw.com
EmmaF@mineolaw.com

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on September 6, 2022 on all counsel or parties of record on the Service List below.

*/s/ Lauren Flotron Lombardo*
LAUREN FLOTRON LOMBARDO, ESQ.

Page **8** of **9**

## SERVICE LIST

Christopher M. Ramey, Esq.
Justin W. Sblano, Esq.
BUTLER WEIHMULLER KATZ CRAIG, LLP
400 N. Ashley Dr.
Suite 2300
Tampa, FL 33602
cramey@butler.legal
hkerr@butler.legal
jsblano@butler.legal
Mdillard@butler.legal
pwilliams@butler.legal
Attorneys for Defendant